Dear Sheriff Hingle:
You have requested an opinion from this Office regarding whether the Plaquemines Parish Government may use public funds to repair privately-owned levees. More specifically, your request pertains to the La Reusite to St. Jude Back Levee, situated on the West Bank of the Mississippi River and on the west side of La. State Hwy. 23, to prevent flood damage to the Parish and its citizens and property.
You explain in your letter and in conversations with this Office, that the La Reusite levees are in desperate need of repair; and, that if they are not repaired, they are in critical danger of breaking and being topped during storm events. Even more critical is the fact that, if a flood or surge event assails the West Bank of Plaquemines Parish, and the levees are compromised, La. State Hwy. 23 will be inundated, and therefore impassable. Further, you explain that, in 2008, the storm surge from Hurricane Ike caused extensive flooding on the West Bank of the Parish, forcing the closure of La. Hwy. 23 for weeks. The referenced highway closure impaired the ability of law enforcement, medical, and fire responders to serve the southern West Bank of the Parish, thereby creating a significant treat to public safety. Sheriff's deputies were needed to escort the general public as they convoyed one way on the top of the Mississippi River levee as a means of travel to the south end of the Parish and back.
I. Factual Background
Plaquemines Parish is Louisiana's southernmost parish consisting of approximately 845 square miles of land. The Mississippi River runs for more than seventy miles through the Parish into the Gulf of Mexico, dividing the Parish into two sections generally *Page 2 
referred to as the "East Bank" and the "West Bank" of the Parish. Both banks of the Parish consist of developed communities such as Belle Chasse, Braithwaite, Port Sulphur, Buras, and Venice. Both banks are home to extensive oil and gas producing properties, as well as being rich agricultural lands that produce millions of dollars in citrus sales.
Because of its location along the Mississippi River, Plaquemines Parish is especially vulnerable to flooding, particularly the West Bank of the Parish. This is because the private levees along the West Bank are wholly inadequate for protecting the area from flooding. In the past, only a direct hit from a tropical system would pose a threat of flood to the area. Now, because of coastal erosion, a steady strong south wind alone may result in overtopped private levees, inundating over twenty (20) miles of the middle portion of the West Bank of the Parish with floodwaters.
As you have explained, such a crippling situation was best illustrated by Hurricane Ike just two years ago. Although Ike made landfall in Texas — 200 miles south of the Louisiana coastline — the storm surge caused extensive flooding on the West Bank of the Parish, damaging both public and private property and forcing the closure of Louisiana State Highway 23 for weeks. The highway closure greatly impaired the ability of law enforcement, medical, and fire responders to serve the southern West Bank of the Parish, creating a significant threat to public safety. Sheriff's deputies were needed to escort the general public as they convoyed one way on the Mississippi River levee as a means of travel to the south end of the Parish. Not only were businesses in the flooded area forced to close, but access to businesses on the West Bank south of the flooded area was extremely limited, resulting in economic loss to both the businesses and the Parish.
Another flood of this nature, or worse, is inevitable unless the private levees in the Parish are raised and repaired. Indeed, in issuing its 2010 hurricane season forecast, the National Oceanic and Atmospheric Administration has predicted the 2010 season to be one of the strongest on record with as many as fourteen hurricanes, three to seven of which may reach Category Three or higher. Significantly, Louisiana State Highway 23 is the sole hurricane evacuation route for the West Bank at the southern end of the Parish. As demonstrated by Hurricane Ike, which again, did not even make landfall in Louisiana, the strong winds associated with any such storms have a devastating impact on the Parish and its citizens.
In an effort to protect the Parish, its citizens, and its property from further disaster, you, as Sheriff, have urged the Plaquemines Parish Government to take proactive measures in repairing and raising the private levees along the West Bank as soon as possible. You have asked us to research whether the Plaquemines Parish Government may use parish funds to repair and raise the privately-owned levees for the prevention of flooding to the Parish. *Page 3 
II. Legal Summary
The inquiry as to whether public funds may be expended on private property is governed by La.Const. Art. VII, Section 14(A), which provides:
§ 14. Donation, Loan, or Pledge of Public Credit
Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Except as otherwise provided in this Section, neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.[1]
As cited above, the plain language of the Constitution prohibits the loan, pledge, or donation of public funds for private use. The proposal of the Plaquemines Parish Government to use Parish funds to repair privately-owned levees does not appear to involve the loan or pledge of funds. Rather, the appropriate inquiry is whether the Parish's proposal constitutes an improper donation of public funds.
In Board of Directors of the Industrial Development Board of theCity of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales
(the "Cabelas" case), [2] the Louisiana Supreme Court articulated the standard for determining whether an expenditure of public funds is an improper donation in violation of La.Const. Art. VII, Section 14(A). The Cabelas case involved a scenario in which bonds, to be secured by sales tax revenue, would be issued for the development of a private retail and sporting goods store and park. The question before the Court was whether the project's financing structure amounted to an unconstitutional loan, pledge, or donation in violation of by La.Const. Art. VII, Section 14(A).[3]
The Court first determined that a donation prohibited by La.Const. Art. VII, Sec. 14(A) is a gratuitous donation. In other words, a violative donation is one motivated by a gratuitous intent, made without condition, wherein the donor does not receive any advantage in return.[4] The Court specifically held that this constitutional provision is violated when public funds or property are gratuitously alienated.[5] The Court went on to analyze the particular facts of the project's financing scheme, focusing on certain factors such as whether both parties are receiving something of value, whether the project serves a public purpose, and whether the parties are reciprocally obligated.[6] The Court *Page 5 
First, Louisiana Revised Statutes 33:1236 (2)(a) expressly provides that:
The police juries and other parish governing authorities shall have the following powers:
 * * *
(2)(a) To regulate the proportion and direction, the making and repairing of the roads, bridges, causeways, dykes, dams, levees and highways when, in the opinion of the police jury, such work will further the best interests of the parish and the parish road system.[9]
Furthermore, pursuant to State of Louisiana Executive Proclamation No. 20 BJ 2010, issued April 29, 2010, and renewed by Proclamation No. 37 BJ 2010, the State of Louisiana is now in a declared state of emergency. Primarily, this State emergency stems from the catastrophic impact of oil along the Louisiana coast leaking from the British Petroleum's Deepwater Horizon drilling operations (the "Oil Spill"). Moreover, in Plaquemines Parish, there is also a declared state of emergency pursuant to Plaquemines Parish Executive Order in place as of April 29, 2010, and renewed on May 28, 2010. In the May 28, 2010, Parish Executive Order, reference is made to a request from the State to raise the private levees along Hwy. 23. More specifically, that Parish Executive Order explains, that if these private levees are over-topped, it would seriously impede or stop the oil spill clean up in that vicinity. We readily recognize that if hurricanes or strong winds approach the West Bank, it is likely that the West Bank, with its inadequate levee system, could be inundated with oil-filled waters. The Louisiana Homeland Security and Emergency Assistance and Disaster Act, La.R.S. 29:721, etseq., grants additional powers to the parish presidents when a Parish is in a declared state of emergency. Among the stated purposes of that Act are:
 * * *
(2) To confer upon the governor and upon the parish presidents the emergency powers provided in this Chapter.
 * * *
(4) To reduce vulnerability of people and communities of this state to damage, injury, and loss of life and property resulting from natural or man-made catastrophe, riots, acts of terrorism, or hostile military or paramilitary action.
 * * * *Page 7 
with this Office, that Hurricane Ike provided the Parish with a "preview" of the physical and economic hardship that the Parish will face if struck by a hurricane or tropical storm.
Therefore it is our opinion that spending public funds to repair the private levees, and thus protecting the Parish from the threat of flooding, the Parish and its citizens will receive numerous benefits in return for such an expenditure. Thus, it is our opinion that, under this prong of Cabella's, the use of the funds is not gratuitous and does not violate La.Const. Art. VII, Section 14 (A).
3. Does the public entity have a demonstrable,objective, and reasonable expectation ofreceiving at least equivalent value in exchange for theexpenditure?
The third inquiry of the Cabela's test focuses on whether the public entity can show that it reasonably expects to receive at least equivalent value in exchange for the funds it expends such that the use of funds is non-gratuitous. Here, it is extremely difficult, if not impossible, to determine the precise value the Plaquemines Parish Government will receive in exchange for the use of the public funds to repair the private levees. Indeed, in protecting the Parish from flooding, the Parish is protecting the lives and safety of its citizens themselves, which is immeasurable and unable to be valued. Further, the exact cost of the levee repairs may not be known at this time such that a comparison may be made between the amount of funds expended and the value of the benefits received. However, given the fact that the Parish is exposed to constant threats of flooding, particularly during every hurricane season, the prevention of damage to life and property and the interruption of business and commerce alone will almost certainly far outweigh the amount of money actually spent on levee repairs. Thus, it appears to this Office that the Plaquemines Parish Government will receive enough value in exchange for the funds spent on repairs such that the use of the funds is non-gratuitous. In this regard, we reference and compare two opinions from our Office that are particularly relevant to your inquiry regarding the use of public funds to repair private levees.
The first opinion, La. Atty. Gen. Op. No. 08-0156, is in response to a request from you regarding the use of public funds to purchase and apply insecticides on all citrus trees in the Parish to prevent the spread of the citrus greening disease. In reviewing theCabela's factors, this Office opined that the use of public funds to spray for and eradicate the citrus greening disease "promotes the safety and general welfare of the people by ensuring that disease-free fruit is produced and shipped and that the disease is not spread to citrus groves in neighboring parishes or states."Id. Similarly, here, the use of the public funds promotes the safety and general welfare of the people by preventing the Parish from flooding and ensuring that the public safety is not jeopardized or threatened. This Office also opined that the use of the public funds to purchase and apply insecticides was non-gratuitous as the preventive measure would protect and preserve the citrus industry and result in the continued collection of tax revenues and tourism and marketing dollars. Similarly here, the levee repairs would prevent the interruption of business and commerce not only in the flooded area, but in the southern end of the Parish which would be rendered inaccessible. The levee *Page 8 
repairs would also prevent the further expenditure of funds on disaster relief and the diversion of governmental resources to manage the resulting crisis.
The second opinion, La. Atty. Gen. Op. No. 09-0259, is in response to a request from the Louisiana Department of Natural Resources ("LDNR") regarding the use of public funds to dredge channels on private property in Lake Henderson to provide vessels greater access to the Lake. LDNR was particularly concerned about the fact that the docks to which the channels would be dredged are privately-owned and would benefit as a side-effect of the dredging project. In applying the Cabela's factors, we opined that, because the Atchafalaya Basin Program was given the statutory authority to "operate and maintain public access features" within the Basin, the proposed dredging project served a public purpose. Similarly here, the Plaquemines Parish Government has the statutory authority to conduct levee repairs, and in times of emergency, may use all available resources to protect the Parish, its property, and its people.
Further, in determining whether the use of funds was gratuitous, we were of the opinion that the dredging project clearly benefited the public as it would allow access to portions of the Basin that were otherwise inaccessible. Also, we explained that we thought that the project would ward off litigation and the State would benefit from the sale of fuel and other products related to the use of the Lake. Similarly here, in preventing the flooding of Louisiana State Highway 23, the Parish would ward off litigation by businesses whose operations would be interrupted or whose sales would be affected. Further, because of the improved flood protection, property values could likely increase, resulting in increased tax revenue to the Parish. And again, the Parish could also save significant amounts of money by preventing further expenditure of funds on disaster relief and management.
Finally, in La. Atty. Gen. Op. No. 09-0259, we suggested that the use of public funds to dredge channels on private property would not violate the Constitution because it did not constitute a "donation" under La.Const. Art. VII, Sec. 14(A), but rather was a statutory duty of the Basin Program. In that opinion, we explained,
because these types of projects are contemplated in the enabling legislation of the Basin Program and because they are aimed at benefiting the public, the currently-proposed project does not fit the classic definition of something that appears to be a gratuitous donation of public funds to a private party. Indeed, there is no real donation to a private party in this situation at all. There is merely a State agency undertaking a project that is consistent with its statutory authority. . . . It should be of no moment that the currently-proposed channels are to be constructed on private property when such construction is pursuant to statutory authorization and is in furtherance of accomplishing statutory goals and when the benefits of the proposed construction inure to the public at-large.[12] *Page 9 
Here, as discussed above, the Plaquemines Parish Government has the statutory authority to regulate the making and repairing of levees when such work will further the best interests of the Parish.[13] And, in a state of emergency, the parish president has the express authority to use all available resources to protect the parish, its people, and its property from damage and to authorize and provide for disaster prevention and preparedness.[14] Thus, in accordance with the above-cited authorities and previous opinions of our Office, it is our opinion that the use of public funds to repair the private levees is not a donation as contemplated by La.Const. Art. VII, Sec. 14 (A), but rather, it is a project in furtherance of the Parish's statutory authority.
Finally, two caveats to this analysis are in order. First, as a matter of contract and access to the private levees, it would be prudent to obtain permission from the private landowners through a written unobstructed right-of-entry to do the construction on the private property. Finally, compared to this Office, Plaquemines Parish Government is in the better position to determine whether or not it has a reasonable expectation of receiving a benefit or value at least equivalent to the amount expended.
CONCLUSION:
In sum, it is our opinion that, because 1) the Plaquemines Parish Government has the statutory authority to conduct levee repairs, 2) the levee repairs serve a public purpose, and 3) the Parish will greatly benefit from the use of the funds, the Plaquemines Parish Government's use of public funds to repair the private levees is not a violation of the restriction against the donation of public funds under La.Const. Art. VII, Sec. 14 (A).
We trust that this analysis adequately responds to your request. Should you have any further questions or concerns, please do not hesitate to contact this Office.
Sincerely,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL By: ________________________
IRYS L. V. ALLGOOD Assistant Attorney General
JDC/ILVA/jv
[1] Emphasis added.
[2] 2005-2298 (La. 9/6/2006), 938 So.2d 11.
[3] Id. at 20.
[4] Id. at 20-22.
[5] Id. at 22.
[6] Id. at 22-27.
[9] Emphasis added.
[12] La. Atty. Gen. Op. No. 09-0259.
[13] La.R.S. 33:1236.
[14] See La.R.S. 29:722 (A) and 29:727 (F).